UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CONNIE RESHARD,

    Plaintiff,

v.

BARBARA J. STEVENSON,

    Defendant.

Civil Action No. TDC-21-1135

## MEMORANDUM OPINION

Plaintiff Connie Reshard, a self-represented attorney, has filed this civil action against Barbara Stevenson, who is also self-represented, in which she asserts claims related to a years-long dispute arising from Reshard's rental and occupancy from 2004 to 2018 of a Washington, D.C. condominium unit owned by Stevenson. Pending before the Court is Stevenson's Motion to Dismiss. The Motion is fully briefed, and the Court finds that no hearing is necessary. *See* D. Md. Local Rule 105.6. For the reasons set forth below, the Motion will be GRANTED.

## BACKGROUND

On May 3, 2004, Reshard entered into a lease agreement with Stevenson for 1435 4th Street, S.W., Unit B714, in Washington, D.C. ("the Unit"). In 2011, the lease became a month-to-month tenancy. As relevant to the current action, Reshard asserts that throughout the lease period, Stevenson failed to make or facilitate timely repairs related to water damage. As a result, Reshard withheld rent payments beginning in November 2014.

## I.  Eviction Proceedings

On April 3, 2015, Stevenson filed an eviction case in the Landlord and Tenant Branch of the Superior Court of the District of Columbia ("D.C. Superior Court") based on non-payment of rent ("the First Eviction Action"). Reshard filed a counterclaim for a rent abatement based on an alleged reduction in services and facilities. After trial was held on March 30 and 31, 2016, the court granted judgment in favor of Stevenson and required Reshard to pay the full amount of unpaid rent and late fees, with no abatement.

In April 2017, Reshard again withheld rent based on some prior repair issues and a new repair issue that arose in 2016. On June 7, 2017, Stevenson filed a second eviction case in the D.C. Superior Court for non-payment of rent ("the Second Eviction Action"). On June 20, 2017, Stevenson attempted to serve Reshard with a 90-Day Notice to Vacate for Personal Use and Occupancy, a step in the process of securing an order that Reshard move out of the Unit so that the owner, Stevenson, could move into the Unit herself. This 90-Day Notice was invalidated on September 11, 2017 because Stevenson did not comply with the proper service rules. On or before the September 26, 2017 trial date, Reshard paid all rent owed, and the court dismissed the second eviction case. On October 2, 2017, Stevenson served a second 90-Day Notice on Reshard.

On January 18, 2018, Stevenson filed a third eviction case in the D.C. Superior Court, Landlord and Tenant Branch, this time seeking eviction to enforce the 90-Day Notice served in October 2017 ("the Third Eviction Action"). On February 8, 2018, the court held an initial hearing. Although Reshard had requested a continuance in order to obtain counsel, the court denied the continuance and instead entered a default against Reshard. On February 12, 2018, Reshard filed an unsuccessful Motion to Vacate the Default Judgment and for Reconsideration of the Motion to Continue the Initial Hearing. After the necessary paperwork was filed, a non-redeemable

Judgment of Possession was entered in favor of Stevenson on February 16, 2018, and a non-redeemable Writ of Restitution for possession of the Unit was entered on March 7, 2018. After Reshard unsuccessfully sought to have the Writ of Restitution stayed, the United States Marshal executed the Writ on May 11, 2018, thereby evicting Reshard from the premises.

## II.   OAH Proceedings

Meanwhile, on January 17, 2018, Reshard filed an administrative complaint with the District of Columbia Office of Administrative Hearings ("OAH"), Office of the Rent Administrator, in which she alleged violations of the Rental Housing Act of 1985, including that the services or facilities available to her as a tenant had been reduced or eliminated; that Stevenson had retaliated against her; and that service of the 90-Day Notice was improper. On May 10, 2018, Stevenson filed a Motion for Summary Adjudication to resolve the OAH case. On July 12, 2018, Administrative Law Judge William L. England, Jr. granted the motion and dismissed all but two of Reshard's claims. Specifically, Judge England found that the doctrine of *res judicata* barred Reshard's claims relating to the alleged reduction in services and facilities between November 1, 2014 and September 26, 2017, as well as her claim for retaliation, because these claims could have been asserted before the D.C. Superior Court, Landlord and Tenant Branch, which has concurrent jurisdiction with the OAH over claims of housing code violations, reductions in services and facilities, and retaliation, the latter of which could have been brought as a defense to a possessory action. Reshard then filed a motion to dismiss voluntarily her remaining claims, including the claim that services and facilities available to her had been reduced after September 26, 2017. On July 13, 2018, the OAH granted the motion and dismissed the remaining claims with prejudice.

### III. Procedural History

On April 5, 2018, Reshard filed a complaint against Stevenson in the United States District Court for the District of Columbia, which was dismissed without prejudice on October 5, 2018 for failure to effectuate service of process. *See Reshard v. Stevenson (Reshard I)*, No. 18-cv-775, 2018 WL 10667526, at *1 (D.D.C. Oct. 5, 2018). On May 8, 2020 Reshard filed a second federal case in the same court, which was dismissed on March 23, 2021 based on a lack of subject matter jurisdiction after the court determined that no diversity jurisdiction existed. *See Reshard v. Stevenson (Reshard II)*, No. 20-cv-1212, 2021 WL 1110713, at *2 (D.D.C. Mar. 23, 2021).

On May 10, 2021, Reshard filed the present Complaint in this Court in which she has alleged eight causes of action, numbered as follows: (1) Breach of Lease Agreement; (2) Retaliation; (3) Wrongful Eviction; (4) Intentional Infliction of Emotional Distress; (5) Declaratory Judgment Related to Primary Jurisdiction and Failure to Exhaust Administrative Remedies; (6) Assault and Battery; (7) Defamation, Slander, and Libel; and (8) Lack of Due Process under the Fifth and Fourteenth Amendments to the United States Constitution.

## DISCUSSION

In her Motion to Dismiss, Stevenson seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1), on the grounds that there is no diversity of citizenship between the parties, and alternatively pursuant to Rule 12(b)(6), on the grounds that Reshard fails to state any claim upon which relief can be granted and that her claims are barred by the doctrine of *res judicata*.

### I. Subject Matter Jurisdiction

Stevenson first argues that Reshard's Complaint must be dismissed for lack of subject matter jurisdiction because both parties are citizens of Maryland. Reshard argues that subject matter jurisdiction exists on the grounds that: (1) there is diversity jurisdiction because Reshard

4

is a citizen of Washington, D.C. and Stevenson is a citizen of Maryland; and (2) there is federal question jurisdiction because Reshard has asserted claims under the United States Constitution.

Federal courts are courts of limited jurisdiction, "constrained to exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statute." *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352 (4th Cir. 1998). Because questions of subject matter jurisdiction relate to the court's power to hear the case, they must be resolved before the court can turn to the sufficiency or merits of a claim. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." (internal citation omitted)). Federal courts have original jurisdiction over civil cases, with some exceptions not relevant here, only in two instances: (1) under federal question jurisdiction, where the case involves an issue of federal law, *see* 28 U.S.C. § 1331 (2018); or (2) under diversity jurisdiction, where the parties in the case are citizens of different states and the amount in controversy exceeds $75,000, *see* 28 U.S.C. § 1332.

It is the plaintiff's burden to show that subject matter jurisdiction exists. *Evans v. B.F. Perkins Co., Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). Rule 12(b)(1) allows a defendant to move for dismissal when it believes that the plaintiff has failed to make that showing. When a defendant asserts that the plaintiff has failed to allege facts sufficient to establish subject matter jurisdiction, the allegations in the complaint are assumed to be true under the same standard as in a Rule 12(b)(6) motion, and "the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). When a defendant asserts that facts outside of the complaint deprive the court of jurisdiction, the Court "may consider evidence outside the pleadings without converting the

5

proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *Kerns*, 585 F.3d at 192. The court should grant a Rule 12(b)(1) motion based on a factual challenge to subject matter jurisdiction "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans*, 166 F.3d at 647 (quoting *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).

In her May 10, 2021 Complaint, Reshard asserts that she "is a resident of and domicile[d] in the District of Columbia," with a mailing address of 800 Maine Avenue, S.W., Suite 200, Washington, DC 20024, and that Stevenson is a resident of Maryland, thereby alleging diversity of citizenship. Compl. ¶¶ 2–3, ECF No. 1. Stevenson, however, notes that the United States District Court for the District of Columbia specifically found, in its March 23, 2021 memorandum opinion dismissing Reshard's complaint in that court based on a lack of subject matter jurisdiction, that "it is now undisputed that Reshard and Stevenson both resided in Maryland when Reshard filed the complaint" in May 2020. *Reshard II*, 2021 WL 1110713, at *2. Stevenson also asserts that the address provided by Reshard is not a residential address but is instead a "mail drop in a commercial space in an office building." Mot. Dismiss at 9, ECF No. 22-1.

With her memorandum in opposition to the Motion, Reshard has submitted a declaration, executed on December 29, 2021, in which she states that she has "resided at 79 Potomac Avenue, S.E. Apt. 240, Washington D.C. 20003 from January 17, 2021 to the present and that Washington, D.C. is my domicile." Reshard Decl. ¶ 2, Opp'n Mot. Dismiss Ex. 1, ECF No. 25-1. She has also submitted a Washington, D.C. driver's license, issued on May 22, 2021, listing the same address, as well as a May 20, 2021 electric bill for that address that lists Reshard as the account holder. This evidence facially supports Reshard's claim that she was a citizen of the District of Columbia

6

as of the filing of the present Complaint and is not necessarily inconsistent with the prior court finding that she was a citizen of Maryland in May 2020 or her identification in the Complaint of a mailing address on Maine Avenue, S.W. in Washington, D.C. Although Stevenson notes legitimate reasons to be skeptical of Reshard's claim, she has neither offered evidence contradicting Reshard's submitted evidence nor requested jurisdictional discovery on this issue. Thus, Reshard, through her declaration and attached evidence, has alleged sufficient facts to establish diversity of citizenship.

Stevenson also argues that there is "no possibility that the amount in controversy could exceed $75,000." Mot. Dismiss at 2. However, in the Complaint, Reshard alleges damages of $400,000 for all of the causes of action, including not only claims relating to Reshard's tenancy but also claims of defamation, slander, libel, and intentional infliction of emotional distress. Under these circumstances, the Court finds that Reshard has adequately established diversity jurisdiction.

Finally, on the issue of subject matter jurisdiction, Reshard also asserts that there is federal question jurisdiction based on her claim under 42 U.S.C. § 1983 of a violation of her constitutional rights. Although Reshard's § 1983 claims fail for other reasons, *see infra* part II.E, the inclusion of a federal claim on the face of the Complaint provides an additional basis for subject matter jurisdiction. The Motion to Dismiss will therefore be denied on the issue of subject matter jurisdiction.

## II.   Failure to State a Claim

Stevenson also seeks dismissal of the Complaint under Rule 12(b)(6) for failure to state a claim. To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

Ordinarily, in reviewing a Rule 12(b)(6) motion, a court may consider only the contents of the pleadings. *See* Fed. R. Civ. P. 12(d). Courts are permitted, however, to consider documents attached to a motion to dismiss "when the document is integral to and explicitly relied on in the complaint, and when the plaintiffs do not challenge the document's authenticity." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)). Courts may also consider facts and documents subject to judicial notice without converting a motion to dismiss into a motion for summary judgment. *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013). "Under this exception, courts may consider 'relevant facts obtained from the public record,' so long as these facts are construed in the light most favorable to the plaintiff along with the well-pleaded allegations of the complaint." *Id.* (quoting *B.H. Papasan v. Allain*, 578 U.S. 265, 283 (1986)). When considering a Rule 12(b)(6) motion based on *res judicata*, the courts may "take judicial notice of facts from a prior judicial proceeding" when the assertion of preclusion as a defense "raises no disputed issue of fact." *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000).

8

Accordingly, in resolving the Motion, the Court will take judicial notice of and consider the docket and record of the prior litigation between the two parties.

### A.  *Res Judicata*

Stevenson argues that Reshard's claims for Breach of Lease (Count 1), Retaliation (Count 2), and Wrongful Eviction (Count 3) are barred by the doctrine *res judicata* because they were either asserted or could have been asserted in the prior litigation in the D.C. Superior Court. *Res judicata*, or claim preclusion, provides that a prior judgment between the same parties precludes subsequent litigation on those matters actually and necessarily resolved in the first adjudication. *In re Varat Enters., Inc.*, 81 F.3d 1310, 1314–15 (4th Cir.1996). The preclusive effect of a prior state court judgment is determined by the law of the state in which the judgment was rendered. *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 162 (4th Cir. 2008).

Under District of Columbia law, "a final judgment on the merits of a claim bars relitigation in a subsequent proceeding of the same claim between the same parties or their privies" and claims "arising out of the same transaction which could have been raised." *Patton v. Klein*, 746 A.2d 866, 869–70 (D.C. 1999). Where there is a common nucleus of facts, the actions arise out of the same transaction. *Id.* at 870. Because a judgment "embodies an adjudication of all the parties' rights arising out of the transaction involved," a prior adjudication bars all claims actually raised, and those which a party failed to raise are said to "merge" into the prior judgment. *Washington Med. Ctr., Inc., v. Holle*, 573 A.2d 1269, 1281 (D.C. 1990).

Thus, three elements must be satisfied to invoke *res judicata* as an affirmative defense to a claim: (1) the claim was adjudicated finally in the first action; (2) the present claim is the same claim as the claim which was raised or which might have been raised in the prior proceeding; and

(3) the party against whom *res judicata* is asserted was a party or in privity with a party in the first case. *Patton*, 746 A.2d at 870.

As an initial matter, the third element is undisputed as the parties here—Reshard and Stevenson—have been the same parties throughout all of the prior litigation. There are also multiple cases that resulted in a final judgment. In the First Eviction Action in the D.C. Superior Court, a trial was held and judgment was granted on March 31, 2016 in favor of Stevenson for unpaid rent and late fees, and Reshard's appeal to the District of Columbia Court of Appeals was dismissed. The Third Eviction Action resulted in a default judgment and the issuance of a Writ of Restitution on March 8, 2018 that was executed on May 11, 2018, Reshard's motions to vacate the default judgment were denied, and her appeal to the D.C. Court of Appeals was dismissed. Decisions of the Landlord and Tenant Branch of the D.C. Superior Court, including default judgments, can have *res judicata* effect. *See Gordan v. William J. Davis, Inc.*, 270 A.2d 138, 139–40 (D.C. 1970). Likewise, Reshard's complaint before the OAH resulted in the dismissal with prejudice of Reshard's claims that constituted a final judgment with preclusive effect. *See Youngin's Auto Body v. District of Columbia*, 775 F. Supp. 2d 1, 5–7 (D.D.C. 2011) (applying *res judicata* based on a prior decision by the OAH).

The question is whether Reshard's claims in Counts 1-3 for Breach of a Lease Agreement, Retaliation, and Wrongful Eviction were actually litigated or could have been litigated in one of these prior actions. Reshard argues that *res judicata* is not warranted because the Landlord and Tenant Branch "is a Court of limited jurisdiction and only landlords can originate cases in the Branch." Opp'n at 7.

However, as noted by the OAH in applying *res judicata* to certain claims advanced by Reshard in her administrative complaint, the D.C. Superior Court, Landlord and Tenant Branch,

10

has concurrent jurisdiction over claims of housing code violations and reductions in services and facilities. *See* July 12, 2018 OAH Order at 6, Mot. Dismiss Ex. G, ECF No. 22-8; *Robinson v. Edwin B. Feldman Co.*, 514 A.2d 799, 800 (D.C. 1986). Moreover, "if a defendant fails to assert a legal defense in the Landlord and Tenant Branch, he may be prohibited from raising it later in another proceeding under the doctrine of *res judicata*." *Barton v. District of Columbia*, 817 A.2d 834, 841 (D.C. 2003) (holding that a tenant could assert race discrimination as a defense in an eviction proceeding in the Landlord and Tenant Branch). For example, although there is no independent cause of action for retaliatory eviction, under D.C.'s anti-retaliation statute, D.C. Code Ann. § 42-3505.02 (West 2001) (previously D.C. Code § 45-2552), retaliation is available as a proper defense to an eviction action for possession. *See Twyman v. Johnson*, 655 A.2d 850, 855 (D.C. 1995).

Here, in the First Eviction Action, the court essentially litigated Reshard's Breach of a Lease Agreement claim, which focuses on the failure to repair certain conditions in the Unit up to March 31, 2016, when it specifically rejected Reshard's claims that those conditions warranted non-payment of rent. *See* July 12, 2018 OAH Order at 7 (finding that the judgment in the First Eviction Action barred relitigation of claims of reductions in services and facilities between November 1, 2014 and March 31, 2016). In July 2018, the OAH dismissed with prejudice, in part on *res judicata* grounds, Reshard's claims that services and/or facilities were substantially reduced or eliminated for the period between April 2016 and July 2018. Even without the OAH proceedings, any alleged reductions to services and facilities that continued after the First Eviction Action could have been litigated in the Third Eviction Action. *See Robinson*, 514 A.2d at 800. Where Count 1 of the Complaint alleges breaches of the lease agreement related to repair issues,

all of which are alleged to have existed before Reshard's eviction in May 2018, *res judicata* prevents Reshard from relitigating these issues now. Count 1 will be dismissed.

Similarly, where the Third Eviction Action sought possession of the Unit and resulted in a final eviction determination, Reshard could have and should have litigated her claims of Wrongful Eviction and Retaliation as defenses to the eviction. S*ee Washington Med. Ctr., Inc.*, 573 A.2d at 1281; *Barton*, 817 A.2d at 841. In fact, Reshard did allege that the eviction was retaliatory in her motion to vacate the default judgment, which was denied. These claims were also asserted and denied in the OAH action. Accordingly, Counts 2 and 3 will be dismissed.

As for Reshard's claim in Count 5 seeking a "Declaratory Judgment Related to Primary Jurisdiction and Failure to Exhaust Administrative Remedies," this claim seeks a ruling that Reshard's disputes with Stevenson should have been decided by the OAH pursuant to Reshard's administrative complaint and not by the D.C. Superior Court. As discussed above, Reshard's claims in Counts 1-3 were actually litigated before the OAH. In any event, this alleged defense to the D.C. Superior Court's decisions in the Third Eviction Action also could have and should have been asserted in the Third Eviction Action and thus is now barred by *res judicata*. *See Barton*, 817 A.2d at 841.

Reshard's citation to *Johnson v. District of Columbia Rental Housing Commission*, 642 A.2d 135 (D.C. 1994), does not alter these conclusions. In *Johnson*, the D.C. Court of Appeals found that *res judicata* was improper because it is an affirmative defense that must be pleaded and established, but the party in that case did not do so. *See id.* at 139. Here, Stevenson both asserted *res judicata* in her Motion to Dismiss and attached docket entries and court filings from the previous litigation that established the defense.

Because Reshard's claims in Counts 1–3 and 5 all have either been previously litigated or could have been litigated in the First or Third Eviction Cases in the D.C. Superior Court, as well as in some instances in the OAH proceedings, they are now barred by *res judicata* and must be dismissed.

### B.     Intentional Infliction of Emotional Distress

In Count 4, Reshard has asserted a claim for intentional infliction of emotional distress ("IIED"). Specifically, she alleges that Stevenson "negligently, recklessly and intentionally caused severe emotional distress to the Plaintiff by her extremely intentional and negligent actions and breach of her duty of care, including but not limited to engaging in or allowing her agents to cause emotional distress by intentionally and maliciously applying for and executing a Writ of Restitution to use lawful means for an unlawful purpose." Compl. ¶ 27.

Under D.C. law, the tort of intentional infliction of emotional distress consists of "(1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Kotsch v. District of Columbia*, 924 A.2d 1040, 1045 (D.C. 2007). On the first element, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* at 1045–46 (quoting Restatement (Second) of Torts § 46, cmt. d (1965)). "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so." *Newmyer v. Sidwell Friends Sch.*, 128 A.3d 1023, 1037 (D.C. 2015) (quoting *Drejza v. Vaccaro*, 650 A.2d 1308, 1316 (D.C. 1994)).

13

Here, Reshard has essentially asserted that the eviction itself constituted the tort. Where an IIED claim requires conduct that is so outrageous and extreme that it goes "beyond all possible bounds of decency," *Kotsch*, 924 A.2d at 1046, Stevenson's use of the D.C. Superior Court to pursue her rights as a landlord and carry out an eviction does not come close to meeting this standard. Because Reshard fails to state a plausible claim for IIED, the Court will dismiss Count 4.

### C.  Assault and Battery

In Count 6, Reshard asserts a claim for assault and battery. In alleging this claim, Reshard states only that "[b]y obtaining and executing an invalid Writ of Execution, Defendant acting intentionally or negligently is causing immediate harmful or offensive contact based on the facts set forth in previous Counts." Compl. ¶ 34.

Under D.C. law, an assault is "an intentional and unlawful attempt or threat, either by words or by acts, to do physical harm to the victim." *Etheredge v. District of Columbia*, 635 A.2d 908, 916 (D.C.1993). "[T]he intentional putting another in apprehension of an immediate and harmful or offensive conduct" is an "essential element" of the tort of assault. *Madden v. D.C. Transit Sys., Inc.*, 307 A.2d 756, 757 (D.C. 1973). A battery is "an intentional act that causes a harmful or offensive bodily contact." *Etheredge*, 635 A.2d at 916.

Even construing the Complaint liberally, nowhere does Reshard assert any sort of harmful or offensive bodily contact. Reshard acknowledges that she was not even physically present at the at the unit at the time of the eviction. *See* Compl. ¶ 26. Thus, no battery has been properly alleged. As for an assault, Reshard likewise has not alleged any attempt or threat to do physical harm to her. Her allegation that "Stevenson and her counsel used the Writ of Restitution essentially as a hammer over the Plaintiff's head, leading to perpetual stress, the humiliation of checking each and

14

every day to determine if the property is on the list of scheduled eviction," Compl. ¶ 26, cannot reasonably be construed as a threat to cause physical harm to Reshard. *See Etheredge*, 635 A.2d at 916. Where Reshard has not even alleged that she had a personal confrontation with Stevenson, at the time of the eviction or otherwise, she has not plausibly alleged an assault. The Court will therefore dismiss Count 6.

### D. Defamation, Slander, and Libel

In Count 7, Reshard alleges that Stevenson is liable for defamation, slander, and libel based on three different incidents. First, Reshard alleges that on January 25, 2018, Stevenson "caused to be made false statements" that Stevenson received service of process when, in actuality, a process server had "posted" the service papers "on the electronic boards located for all residents, owners and visitors" of the condominium complex at which she resided, knowing that the fact of service would thus be "broadcast throughout the complex." Compl. ¶ 36. Second, Reshard alleges that on March 31, 2015, Stevenson made false statements in open court, presumably in relation to the First Eviction Action, that Reshard maintained the Unit in an unclean state in 2015. Finally, Reshard alleges that Stevenson "has repeatedly made false statements" that Reshard "filed frivolous motions on September 26, 2017 . . . and via her attorney Edward Cordone and continues to publicly defame the Plaintiff." Compl. ¶ 37.

To state a cause of action for defamation under D.C. law, a plaintiff must allege four elements: "(1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm." *Crowley v. N. Am. Telecomms. Ass'n*, 691 A.2d 1169, 1173 n.2

15

(D.C. 1997). The statute of limitations for claims of libel and slander is one year. D.C. Code Ann. § 12-301(4) (West 2001).

In her Motion, Stevenson argues that Count 7 should be dismissed in its entirety because the posting of service papers was not a false statement and thus not defamatory; the March 31, 2015 statements in open court are covered by the litigation privilege; and in any event, each incident is barred by the one-year statute of limitations. Stevenson is correct that Reshard has not alleged a false statement arising from the posting of service papers, and that under the litigation privilege, statements made in the course of litigation cannot form the basis of a defamation claim. *See Havilah Real Prop. Servs., LLC v. VLK, LLC*, 108 A.3d 334, 348 (D.C. 2015).

Moreover, because the statements identified with a date all occurred on or before January 25, 2018, and the Complaint references only events occurring on or before May 11, 2018, any defamatory statements alleged with sufficient specificity to support a plausible claim for relief were made more than one year before the filing of the Complaint on May 10, 2021 and are thus barred by the statute of limitations. Although Reshard argues that, pursuant to *Artis v. District of Columbia*, 138 S. Ct. 594 (2018), the statute of limitations was tolled while she pursued her claims in other courts, she misreads *Artis*. In *Artis*, the United States Supreme Court held that a provision within the federal supplemental jurisdiction statute, 28 U.S.C. § 1367(d), tolls the statute of limitation on state law claims during the pendency of a federal suit that resulted in the dismissal of all federal claims and a decision by the district court to decline to exercise supplemental jurisdiction over the state law claims. *Artis*, 138 S. Ct. at 598. Specifically, the Court found that where the plaintiff had filed an employment discrimination suit in federal court alleging violations of both federal statutes and D.C. laws, and the district court granted summary judgment on the federal claim and then dismissed the D.C. law claims after declining to exercise supplemental

16

jurisdiction over them, § 1367(d) tolled the statute of limitations on those claims during the entire pendency of the federal lawsuit and for 30 days after the dismissal. *Id.* at 598.

Here, however, § 1367(d) does not apply to the dismissal of Reshard's two prior federal cases. In both cases, Reshard asserted diversity jurisdiction under 28 U.S.C. § 1332 and did not allege a federal claim that would permit the use of supplemental jurisdiction over her D.C. law claims. *See Reshard I*, 2018 WL 10667526, at *1 ("Connie Reshard filed this diversity action . . ."); *Reshard II*, 2021 WL 1110713, at *1 ("The complaint avails itself of the Court's diversity jurisdiction . . ."). Thus, the tolling provision of § 1367(d) does not apply. In particular, where Reshard's first federal case was filed on April 5, 2018 and dismissed on October 5, 2018 for lack of service, there is no basis to conclude that the statute of limitations was tolled during the pendency of that case. Then, more than a full year passed before Reshard filed her second federal case in May 2020. Accordingly, the one-year limitations period would have already run before Reshard filed her second federal case on May 8, 2020, well over a year after the allegedly defamatory statements. Thus, the claims in Count 7 are barred by the statute of limitations.

For all of these reasons, the Court will dismiss Count 7.

### E. Section 1983

Reshard's federal claim for violations of due process under the Fifth and Fourteenth Amendments to the Constitution fail because the defendant, Stevenson, is not a state actor. Section 1983 creates a cause of action against any person who, under color of state law, subjects a person within the jurisdiction of the United States "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983 (2018). Thus, Stevenson may be held liable under § 1983 only if she was a state actor. *See id.* There is no allegation that Stevenson, a private citizen, was a government employee or was otherwise a

representative of a government entity. While there are limited circumstances under which a private party may nevertheless be considered a state actor for purposes of a § 1983 claim, none of those circumstances are present here. *See DeBauche v. Trani*, 191 F.3d 499, 507 (4th Cir. 1999). Accordingly, Reshard's federal constitutional claim that she was denied due process must be dismissed.

## CONCLUSION

For the foregoing reasons, Stevenson's Motion to Dismiss will be GRANTED. A separate order shall issue.

Date:  May 13, 2022

THEODORE D. CHUANG
United States District Judge